LYLE E. DAVID, APPELLEE, v. ERNA TUCKER, APPELLANT.

244 N. W. 2d 197

Filed July 21, 1976. No. 40511.

Michael O. Johanns and Edward E. Hannon of Cronin & Hannon, for appellant.

William W. Griffin, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This is an action for specific performance of an option to purchase real estate. The trial court found generally for the plaintiff, reformed the memorandum of the agreement to state the terms for payment, and granted specific performance.

The defendant has appealed and contends the agreement was invalid because it failed to satisfy the requirements of the homestead law and the statute of frauds and was the result of undue influence. The defendant also counterclaimed for damages for waste and the reasonable rental value of the property.

The land involved is Section 13, except the southwest quarter, in Township 26 North, Range 12, and the northwest quarter of Section 17, Township 26 North, Range 11, all West of the 6th P.M. in Holt County, Nebraska. The land had been owned by the defendant and her late husband, Fred Tucker, as joint tenants with right of survivorship. When Fred Tucker died in 1956, the defendant became the owner in fee simple of the land. Any interest that she might have otherwise received under section 40-117, R. R. S. 1943, became merged in her new title. See Niemann v. Zacharias, 185 Neb. 450, 176 N. W. 2d 671. Section 40-104, R. R. S. 1943, was not applicable to the option agreement and the defendant's claim that the agreement was invalid because not acknowledged was without merit.

The plaintiff had been a tenant upon the property for 19 years. In the fall of 1972 or the winter of 1973, the plaintiff told the defendant he was interested in buying the property. On April 15, 1973, the defendant wrote to the plaintiff stating that she would like to have $100 an acre for the 160-acre meadow and $95 an acre for the rest of the land. She further stated that she hoped this would be "O.K." with the plaintiff, and if not she would rent the land to him again.

In the fall of 1973, on two occasions, the plaintiff asked the defendant to accompany him to the Farmer's Home Administration office in O'Neill, Nebraska, so that he could make arrangements to finance his purchase of the land. On each occasion the defendant stated that she wanted to wait for a while.

On February 11, 1974, the defendant wrote to the plaintiff stating that she was undecided about what to do, but that $100 an acre was too low a price for the land and she could not sell it for that. She further stated that if the plaintiff "can not do that," she would rent it out again.

On February 14, 1974, the plaintiff went to see the defendant to find out why she had changed her mind.

The defendant stated that she had been offered $125 an acre for the land. The plaintiff stated he would pay $125 an acre but would not go above that figure. The defendant said the plaintiff should pay more, but according to the plaintiff, finally said $125 an acre would be satisfactory. The parties discussed terms and, according to the plaintiff, the defendant wanted 29 percent down with the balance on a 10-year installment contract with equal payments and 7 percent interest. The defendant had received a letter from a lawyer, some time previously, in which she had received advice as to how to sell the land. The parties finally arrived at an agreement to lease the land to the plaintiff for another year with an option in the lease for the plaintiff to purchase the land. A memorandum in the handwriting of the defendant was then prepared and signed by both parties. The memorandum, which is exhibit 4, was as follows:

"Febr. 14th 1974, I lease the 640 acres to Lyle David for $2,100-$800. due the first of March, 1974, balance due Nov. 1974, with right to buy the place in 1975, for $125.00 an acre with 7 per cent interest

"Rec'd of Lyle David $1.00 in cash to make this legal, "on 10 year contract

"Erna Tucker
"Lyle E. David."

On January 14, 1975, the plaintiff wrote to the defendant stating he wished to exercise the option and enclosing a form of a proposed real estate contract stating the terms in greater detail than the memorandum of February 14, 1974. The defendant then consulted local counsel who wrote to the plaintiff on February 13, 1975, stating that the defendant would not perform the option agreement.

The statute of frauds provides that a contract for the sale of any land shall be void unless the contract or a memorandum thereof be in writing and signed by the party by whom the sale is to be made. § 36-105, R. R. S. 1943. The memorandum is not the contract

but only written evidence of an oral contract. Ord v. Benson, 163 Neb. 367, 79 N. W. 2d 713. The memorandum must contain the essential terms of the contract. Heine v. Fleischer, 184 Neb. 379, 167 N. W. 2d 572; Kubicek v. Kubicek, 186 Neb. 802, 186 N. W. 2d 923. Generally, the memorandum should contain the names of the parties, a description of the land, the price, the general terms of the agreement, and the signature of the vendor. Campbell v. Kewanee Finance Co., 133 Neb. 887, 277 N. W. 593. Ordinarily, time for performance is not an essential term of the contract, but it must be included in the memorandum to be enforceable. Heine v. Fleischer, *supra*.

The defendant claims the memorandum involved in this case was invalid because the description was insufficient and the memorandum did not contain the essential terms of the contract in regard to the payments to be made by the plaintiff.

Generally, parol evidence is admissible not to vary, contradict, or control the written contract of the parties, but to apply it to the subject matter and thereby render certain that which otherwise would be doubtful and indefinite. Holliday v. McWilliams, 76 Neb. 324, 107 N. W. 578. In Wisnieski v. Coufal, 191 Neb. 598, 216 N. W. 2d 736, a memorandum which referred to the "120 acres" was held sufficient and subject to amplification by parol evidence. See, also, Adams v. Thompson, 28 Neb. 53, 44 N. W. 74; Ballou v. Sherwood, 32 Neb. 666, 49 N. W. 790; Wright v. Negus, 111 Neb. 260, 196 N. W. 148; Ruzicka v. Hotovy, 72 Neb. 589, 101 N. W. 328.

The option agreement in this case was contained in a lease of land which the plaintiff had been renting for 19 years. The defendant owned no other 640-acre tract of land although she did own an 80-acre farm in Wayne County, Nebraska.

The evidence clearly established that the option agreement had reference to the land which the plaintiff had

rented from the defendant for many years. The description in the memorandum was sufficient to satisfy the statute of frauds and was subject to explanation and amplification by parol evidence.

As to the terms for payment, the memorandum stated only that the price was $125 an acre for 640 acres on a 10-year contract at 7 percent interest. The memorandum failed to state there was to be a 29 percent downpayment with the balance payable in equal annual installments. The omission of these terms from the memorandum made the terms unenforceable, Heine v. Fleischer, *supra*, but did not destroy the legal efficacy of the memorandum otherwise. The plaintiff testified these terms were part of the agreement the parties had made and the defendant did not testify otherwise. The evidence was sufficient to justify reformation of the memorandum so that it would state the terms of the agreement that the parties actually entered into. Schweitz v. State Farm Fire & Cas. Co., 190 Neb. 400, 208 N. W. 2d 664. See 66 Am. Jur. 2d, Reformation of Instruments, § 41, p. 565.

With respect to undue influence, the burden was on the defendant to establish that the defendant was a person who would be subject to undue influence, that there was an opportunity to exercise undue influence, that there was a disposition to exercise undue influence, and that the result was the effect of undue influence. Gaeth v. Newman, 188 Neb. 756, 199 N. W. 2d 396.

The evidence established the defendant was a widow, 80 years of age, who had an eighth grade education. She had some physical problems that were not unusual for a person her age, but there was no evidence or claim that she was incompetent. The parties had carried on negotiations for a sale of the property over a period of about 18 months. The only matter which seemed to be in question was the price for the land. During this time the defendant wrote two letters to the plaintiff concerning the property. In the first letter she priced the land

at $95 and $100 per acre. In the second letter she said $100 per acre was not enough. She received an offer of $125 an acre from a broker before the conversation at her home took place on February 14, 1974. When the plaintiff agreed to that price she tried to get more but the plaintiff refused to go over $125 per acre. The defendant testified that she was afraid the plaintiff would go back to $100 per acre. In other words, the defendant agreed to the $125 an acre option price because she was afraid she might have to take less if she did not agree to $125 per acre.

The evidence here failed to establish undue influence. We concur fully in the findings of the trial court on this issue.

It is unnecessary to discuss the other assignments of error. The judgment of the District Court is affirmed.

AFFIRMED.