RAYMOND YATES, APPELLANT, V. MILDRED GROSH ET AL., APPELLEES.

328 N.W.2d 200

Filed December 23, 1982. No. 81-713.

Ronald A. Ruff of Ruff & Murphy, for appellant.

Paul D. Merritt, Jr., William P. Mueller, and J. A. Lane of McGinley, Lane, Mueller, Shanahan, O'Donnell & Merritt, for appellees.

KRIVOSHA, C.J., HASTINGS, and CAPORALE, JJ., and RIST, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Raymond Yates (Ray), plaintiff-appellant, seeks

specific performance of an alleged oral contract with his father, Benjamin Yates (Ben), to give the home farm to Ray. Upon trial, the District Court of Lincoln County dismissed the petition for failure of proof. Plaintiff appeals.

A chronology of events covers the period 1950-78. In *1950*, Ben and his wife, Cora, owned as joint tenants the 960-acre home farm occupied by them and three children including Ray, age 15 years; Ray had quit school without completing the ninth grade. Ray claims Ben orally promised to give him the farm if he would stay at home and work; Ray stayed at home and worked. In *1955*, Ray married and lived on the farm with his parents; Ray contends Ben renewed his promise to give him the farm if he would not leave the farm and seek railroad employment. In *1956*, Ray and Ben began a 50-50 farm partnership. In *1957*, a tornado destroyed the farm buildings; Ray bought the adjoining Snavely farm and both families moved there; title to the Snavely farm was taken in the names of Ray and Ben for convenience to protect Ben who had included the home farm as added security for the Snavely purchase mortgage. In *1965*, Ray bought the Carter farm with joint title vested in the same manner and purposes as the Snavely farm; later Ray bought another farm in his own name. He now owns 2,500 acres of land. In *1968*, Ben and Cora moved to North Platte, Nebraska; on January 1, 1968, Ray and Ben terminated their partnership by written agreement, including a gift to Ray of Ben's interest in the farm machinery, livestock, and supplies; March 1, 1968, the home farm was leased to Ray for 1 year on terms of $2,500 cash and crop rents; Ray continued to occupy the farm under these lease terms until 1978. Ray claims Ben again promised the farm to him. In *1969*, Ben and Cora filed a federal gift tax return reporting gifts to Ray valued at $33,962; September 8, 1969, Ben and Cora executed identical wills. In *1970*, Cora died. Ben died May 28, *1978*, at age 88

years; his 1969 will was admitted to probate October 18, 1978. Material here are the provisions of the will that devised the home farm to four older daughters, Mildred, Florence, Mary, and Gladys as residuary beneficiaries, and the following: "I am not unmindful that I have not provided for my beloved son, Raymond Yates, in this my Last Will and Testament, not from lack of love and affection, but for the reason that I have, during my lifetime in my opinion, given him his full share of my estate."

There is no record of Ray having agreed to any alleged promise or terms of a contract.

It is plaintiff's theory that he relied on his father's oral promises to give him the farm if he would stay at home and do the farmwork; that he did so for 28 years without compensation except groceries, farm expenses, and other miscellaneous items, which was partial performance of the claimed contract. Ray's evidence concerning compensation was evasive and inconclusive.

There is little conflict in the evidence that Ray did occupy the farm up to 1979, and beginning in 1950 his farming duties and responsibilities increased as he matured and Ben's farmwork decreased as he became older. There is conflict in the evidence as to all of the other issues, facts, and circumstances.

Both express and implied contracts have their foundation in the consent of the parties. "An action in contract inevitably rests upon a promise or set of promises. A promise may be stated in words, either oral or written, or may be inferred wholly or partly from conduct." *Clark & Enersen, Hamersky, S., B. & T., Inc. v. Schimmel Hotels Corp.*, 194 Neb. 810, 813, 235 N.W.2d 870, 872 (1975).

The primary error assigned is the finding of the trial court that plaintiff's proof was not clear and satisfactory.

Plaintiff's testimony concerning Ben's oral promises shows: *1950* "Q. Who was present at the time? A. My mother, and dad and me. . . . Q. What was

the agreement? A. The agreement was that I was supposed to get the farm if I stayed home and did the work." *1955* "Q. Who was present? A. My wife was present; my brother-in-law, Harvey Hiatt; my sister, Gladys; and my mother, and my dad. . . . Q. What did your dad say? A. He said if I would stay and continue the farm would sure be mine." Gladys and Harvey Hiatt corroborated this testimony. Gladys Hiatt, another daughter from a previous marriage, was disinherited by the terms of Ben's will. *1968* "Q. All right. Who was present? A. My mother, and me, and my wife and my dad. . . . Q. What was said about the land? A. The land was supposed to be mine. Q. Did your father say how the land was going to get to you when it's mentioned right in this lease agreement that it belongs to him and your mother? A. He supposedly made a will leaving me the land. Q. He told you that at that time? A. Yes, he did."

" 'Equity cases are heard de novo by this court. In determining, however, the weight to be given the evidence, this court will consider the fact that the trial court observed the witnesses and their manner of testifying.' " *Rudolph v. Hartung*, 202 Neb. 678, 686, 277 N.W.2d 60, 64 (1979). " 'It is very proper that the assertion of such a contract, especially when it is claimed to be entirely in parol, should be regarded by the court with grave suspicion, and the establishment thereof required by evidence which clearly indicates the minds of the parties met upon the terms of the contract sought to be established.' " *Id.* at 683, 277 N.W.2d at 63.

"We have consistently required that a party seeking specific performance of an oral contract for the sale of real estate upon the basis of part performance must prove an oral contract, the terms of which are clear, satisfactory, and unequivocal, and that the acts done in part performance were referrable solely to the contract sought to be enforced, and not such as might be referrable to some other or

different contract, and further that nonperformance by the other party would amount to a fraud upon the party seeking specific performance." *Reifenrath v. Hansen*, 190 Neb. 58, 63, 206 N.W.2d 42, 45 (1973); *In re Estate of Layton*, 212 Neb. 518, 323 N.W.2d 817 (1982).

We measure plaintiff's evidence against the above standards. At the outset, it is improbable that Ben would make the claimed promise to a 15-year-old son, particularly where another son, Joseph, had just graduated from the agricultural high school at Curtis, Nebraska. Further, the claimed partial performance is without support during the 1950-57 period, considering Ray's age, experience, and limited resources.

For the 1957-78 period Ray's role and capabilities as a farmer-rancher are established; however, its proof refers to other contracts and the arm's length business relationships of Ray and Ben which discredit plaintiff's claims. Ray and Ben first had a continuous farming partnership until 1968 which included all farming operations, income tax returns, mutual credit arrangements, and both living and working on the farms owned by Ray, Ben, and Cora. This partnership was mutually terminated in writing; Ben and Cora made gifts to Ray. Their next 10-year farm relationship was that of landlord and tenant. Ben's will explained Ray's disinheritance.

Plaintiff's evidence does not meet the standard of clear, satisfactory, and unequivocal proof of the claimed contract and its terms, consideration, partial performance, and the parties' assent thereto, either expess or implied. Defendants were entitled to judgment on their motion made at the close of plaintiff's case in chief.

It is not necessary to consider plaintiff's other assigned errors.

The briefs do not address the issue of a joint tenant (Cora) not being a contracting party.

The trial court properly dismissed the plaintiff's petition.

AFFIRMED.